UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KODIAK GAS SERVICES, LLC, | § § | |
| Plaintiff, | § § § | CIVIL ACTION NO. |
| v. | § § | JURY DEMAND |
| LEGEND ENERGY ADVISORS, LLC, | § § § | |
| Defendant | § § | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND FRAUDULENT INDUCEMENT

Plaintiff Kodiak Gas Services, LLC ("Kodiak") brings this Complaint for Declaratory Judgment and Fraudulent Inducement against Defendant Legend Energy Advisors, LLC ("Legend") and alleges as follows:

## I.
## NATURE OF ACTION

1.      Legend's defective products, broken promises, and greed—that is what this case is about. Legend repeatedly fleeced Kodiak representing that it was qualified to supply products and services it was not capable of supplying. The fleecing occurred in stages. First, Kodiak paid Legend over $4 million for hundreds of natural gas monitoring devices that Legend failed to deliver and the vast majority of the few it did deliver did not work as required. Legend knew it did not have the technical chops or the intention to deliver on its promises when it made them. Litigation ensued, and the parties entered into a Mediation Settlement Agreement ███████████████████ ███████████████████████████████████████████████ The Settlement ████████████████████████████████████████████████████████ █████████████████████████████████████████████████████.

Little did Kodiak know this settlement occasioned the second fleecing—Legend never intended to

████████████████████████████████████████████████

███████████████████████████████████. To mitigate its losses and hedge against Legend's repeated failure to perform, Kodiak independently developed at its own capital expense a natural gas compressor monitoring and leak detection system that actually works.  For its innovation, the U.S. Patent Office awarded Kodiak a patent. Based on the award of Kodiak's patent, Legend now accuses Kodiak of fraud and has resurrected its supposedly released trade secrets claims. In other words, Legend is seeking even more money from Kodiak for allegedly misappropriating worthless and inoperable technology that Kodiak tried to get rid of and that never worked in the first place. This latest shakedown is the tipping point that necessitates this suit and court intervention.

2.      Legend is like a modern-day snake oil salesman. Legend repeatedly duped Kodiak into believing Legend was experienced, knew what it was doing, and would deliver on its promises of providing proprietary technology to generate useful data. But just like all snake oil salesmen, Legend could not deliver on its inflated and fraudulent promises. Instead, Legend cobbled together overpriced, non-functional technology, all the while fleecing millions from Kodiak for its defective products. When Kodiak called Legend on its failures, Legend retaliated and blamed its victim—Kodiak—for Legend's failures.

3.      Kodiak brings this action to clear its name, to unwind the contracts Legend fraudulently induced Kodiak into signing, recover damages from Legend's fraud, obtain a declaration that Kodiak is the true and rightful owner of U.S. Patent No. 11,609,151 ("'151 Patent") and obtain a declaration that Kodiak's '151 Patent lists the proper inventors.

4.      Kodiak contracted in good faith with Legend. The same cannot be said for Legend. Kodiak needed products and services to fulfill specific technical requirements—namely, products

and services for generating critical data from its natural gas compressors. But Legend knew it could not deliver on its promises to provide those critically important products and services. In fact, just a few months into the first work order—and after Kodiak had paid Legend millions—it became apparent that Legend's products and software did not work. Kodiak repeatedly informed Legend of the issues with Legend's products and services and extracted commitments from Legend to promptly remedy the issues; commitments that Legend did not and could not keep. Kodiak also informed Legend that it would move in a different direction and seek to develop its own solution.

5.      After months of continued failures by Legend to deliver working products, Kodiak sought to unwind its contracts with Legend by filing a complaint in Texas district court in Harris County for breach of contract by Legend. Legend counterclaimed, alleging Kodiak's technology was somehow based on or derived from Legend's trade secrets. Because this allegation was flatly false, Kodiak vigorously disputed it.  Kodiak's technology is fundamentally different – necessarily so since Legend's products did not work, whereas Kodiak's independently developed products perform to specification.

6.      Inasmuch as Kodiak developed its proprietary technology separately from any information received from Legend, during the development of its own proprietary technology, Kodiak prudently filed a patent application to protect its innovation.

7.      Following mediation, Kodiak and Legend settled their state-court lawsuit—or so thought Kodiak. As part of the settlement, Legend agreed to ███████████████████████

█████████████████████████████████████████████████████████████████████

██████████████████████████████████████████. In return, Kodiak agreed to ████

███████████████████████████████████. To date, Legend has not ███████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████.

8.      In addition, as part of the mediated settlement, Legend ██████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████.

9.      On March 21, 2023, the U.S. Patent Office awarded Kodiak the '151 patent for its independently developed, functioning product. Nearly a year after the grant of the '151 Patent, and more than a year after Kodiak ███████████████████, and only after Kodiak yet again sought the intervention of the mediator to try to finalize the parties' settlement, Legend now seeks to re-trade the prior settlement. Despite entering into what Kodiak understood was an enforceable settlement agreement and ████████████████, Legend sent a letter on January 31, 2024 (the "January 31 letter") —the day before a telephone conference with the mediator was requested by Kodiak in an effort to finalize the settlement, threatening Kodiak with renewed litigation. Legend's January 31 letter asserts that ██████████████████████████ ████████. In this letter, Legend also █████████████████████ ███████████████████████████████████████████ ███████████████████████████. Unsurprisingly, Legend makes no reference to █████████████████████████████ ████████████████████████.

10.     To clear its name, Kodiak now seeks a declaration of rights to resolve this dispute once and for all.  Specifically, Kodiak seeks declarations that:

a. inventorship is properly recorded for '151 Patent in accordance with 35 U.S.C. § 116;

b. the '151 Patent is not invalid on the basis of a defect in inventorship under 35 U.S.C. § 256;

c. the '151 Patent is properly assigned to Kodiak;

d. Kodiak did not commit any acts of inequitable conduct against the U.S. Patent and Trademark Office ("PTO") to obtain the '151 Patent;

e. the '151 Patent does not contain any trade secrets of Legend; and

f. Kodiak did not fraudulently induce the state-court settlement agreement in connection with it pending patent application for the '151 Patent.

11.     In addition, Kodiak seeks relief for Legend's fraudulent inducement causing Kodiak to enter into a Master Services Agreement and Work Order with Legend that Legend had no intention or ability to fulfill while collecting millions of dollars from Kodiak.

12.     Finally, Kodiak further seeks relief from Legend's fraudulent inducement that caused Kodiak to enter into a Mediation Settlement Agreement that Legend also had no intention of honoring while ███████████████████████████████.

## II.
## PARTIES

13.     Plaintiff Kodiak Gas Services, LLC is a foreign limited liability company with its principal place of business in Texas. Kodiak's principal executive offices are located at 9950 Woodloch Forest Dr., 19th Floor, The Woodlands, Texas 77380.

14.     Defendant Legend Energy Advisors, LLC is a Wyoming limited liability company doing business in the State of Texas. Legend is registered to do business in Texas and maintains a corporate office located at 2200 Post Oak Blvd., Suite 1000, Houston Texas 77056.

(https://legendenergyadvisors.com/contact-us/, last visited April 10, 2024.) Defendant can be served with process through its registered agent, located at 1999 Bryan St., Suite 900, Dallas, Texas 75201, or wherever it may be found.

### III.
### JURISDICTION AND VENUE

15.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the patent laws of the United States, Title 35 of the United States Code.  There is a sufficiently concrete and justiciable dispute ripe for declaratory judgment at least based on Legend's January 31, 2024 letter threatening suit in federal court.  This Court has subject matter jurisdiction under 28 U.S.C. § 1338.  This Court has supplemental jurisdiction over the related Texas state law and common law equitable causes of action pursuant to 28 U.S.C. § 1367(a), which all arise out of the same common nucleus of operative fact as shown below.

16.     This Court has personal jurisdiction over Legend because Legend regularly conducts business in the State of Texas and in this District. Legend's principal place of business is also located in Houston, Harris County, Texas. Legend has the necessary minimum contacts with the State of Texas, and subjecting Legend to jurisdiction in Texas does not offend the traditional notions of fair play and substantial justice.

17.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Legend has regular and systematic contacts within this District including its principal place of business. In addition, all or a substantial part of the events giving rise to the dispute between the parties occurred in whole or in part in Harris County, Texas. Harris County was also identified in a contract giving rise to the disputes between the parties. Texas Civil Practice & Remedies Code § 15.035(a).

### IV.

6

## FACTUAL BACKGROUND

18.     Kodiak is the largest contract natural gas compression services provider in the continental United States. Kodiak provides contract compression and related services to oil and gas producers and midstream customers in high-volume gas gathering systems, processing facilities, multi-well gas lift applications and natural gas transmissions systems.

19.     In 2020, Kodiak desired to monitor remotely its natural gas compressors on a real-time basis in the field. Several businesses market and sell products to provide remote monitoring. Kodiak considered several of these options, as well as developing its own technology to do so.

20.     Legend was one of the businesses considered by Kodiak. Legend markets itself as a "leading energy advisory and data company" that allegedly provides remote data communication, monitoring and controls to businesses.  Based on Legend's representations and promises about its products and services, Kodiak awarded the business to Legend to meet its need. Kodiak entered into a Master Services Agreement and Work Order (as defined below). Unfortunately, as Kodiak learned the hard way, Legend's claims of technical expertise were a sham, nothing but a façade to sell worthless equipment and services to Kodiak that did not perform as promised, and in many cases did not work at all.

### A.  The Master Services Agreement and Work Order

21.     On or about February 23, 2021, Kodiak and Legend entered into a Master Services Agreement ("MSA") under which Legend would provide goods and services to Legend as specified under separate work orders. Attached hereto as Exhibit 1 is the MSA.

22.     Paragraph 1.1 of the MSA provides: ███████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████ Ex. 1 at 1.

23.     On or about July 1, 2021, Kodiak and Legend entered into Work Order Number 1 under the MSA ("Work Order"). Attached hereto as Exhibit 2 is the Work Order.

24.     The Work Order required Legend to provide Kodiak a █████████████████████ ███████████████████████████████████████████████ ("Legend Panel(s)" or "Panel(s)"). Section 1(c) of the Work Order provides: ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████ Ex. 2 at 2.

25.     The Legend Panels were supposed to timely generate and deliver data on Kodiak's natural gas compressor units. Legend represented that their Panels would monitor the functionality and operation of Kodiak's gas compressors through software provided by Legend. The Work Order required Legend to █████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████ Ex. 2 at

2. For this, Section 1(c) of the Work Order further provided: ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



Ex. 2 at 2. These promises were never kept, and on information and belief, Legend never intended to keep them.

26.     In exchange for Legend providing ███████████████████, Kodiak agreed to ██████████████████████.

27.     In addition, Kodiak agreed to ████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████. Ex. 2 at 4-5.

28.     This data was critical to Kodiak and was a key reason Kodiak chose Legend for its products and services in the first instance.

**B.  Legend Fails to Deliver Working Panels or Data**

29.     By October 2021, just three months after the execution of the Work Order, problems with Legend's Panels began to manifest. Kodiak contacted Legend because the Panels were not working and were not generating required data.  By December 2021—just two months later—it was clear that Legend's Panels were not working as promised. Kodiak was not receiving the data it needed from the majority of Panels, let alone *all* the Panels as required under the Work Order.

30.     Kodiak continued to communicate and meet with Legend for months to try and resolve these issues. In January and February 2022, Kodiak had numerous meetings and discussions with Legend in an attempt to ascertain why the Legend Panels and software were not working. Despite Kodiak providing Legend with additional information, the problems with the Legend Panels persisted, leaving Kodiak without access to data for which it was paying.

31.     In March 2022, Kodiak continued to seek answers from Legend to resolve the issues with the non-functional Panels. Despite the fact the Panels were not working or delivering data as promised, Kodiak continued to pay Legend for monitoring the Panels, including approximately 100 Panels that were not delivering any data.

32.     In March and April 2022, Kodiak ███████████████████████████████████ ███████████████████████████████████████████████████████████████.

33.     Despite Kodiak working with Legend for months to resolve these issues, Legend never fixed the issues with its defective Panels and software.

34.     By July 2022, ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████ as required. Ex. 2 at 2. Kodiak also paid Legend approximately ████████ for monitoring services.

35.     Based on Legend's failure to deliver working Panels and software from the start, and its inability to fix the issues with the Panels and software despite working with Kodiak for months, hindsight reveals that when Legend entered the MSA, Legend knew and hid from Kodiak that Legend could not deliver reliable products and services.  And it is clear that Legend also then knew and hid from Kodiak that Legend could not ever deliver Panels or software that worked or provided the required data—███████████████████████████████████—as promised in the Work Order. And given Legend's course of conduct, it is clear that Legend never

intended to live up to those promises when it made them in the MSA and Work Order, but rather, Legend made these promises nonetheless to induce Kodiak to pay Legend millions.

36.     Kodiak relied on Legend's false promises to deliver working Panels, as advertised, and perform in a workmanlike manner and was unaware that Legend could not perform and did not intend to perform at the time the parties entered into the MSA and the Work Order.

37.     Indeed, Legend appeared on the surface to be a successful business and marketed itself as a "leading energy advisory and data company" and made representations and promises about its products, services and abilities to Kodiak.   Kodiak, therefore, reasonably relied on Legend's promises before entering into the MSA and the Work Order.   And in reliance on the promises Legend made, Kodiak entered into the MSA and the Work Order agreements.

38.     As a result of its detrimental reliance on Legend's false statements, Kodiak was injured.   Kodiak paid Legend ███████████ pursuant to the MSA and the Work Order for work that Legend did not intend to and would never perform.   Along with that payment came lost time and business opportunities to pursue other options that actually did work and could provide the data that Kodiak needed.

### C.  Legend Begins Developing Its Own Technology and Sues Legend for Breach of Contract

39.     After months of effort, Kodiak determined that Legend simply could not perform as required under the MSA and the Legend Panels and software could not deliver the data as required under the MSA and Work Order.   It also became clear that Legend did not have the expertise in data analytics as promised on its website and represented to Kodiak. During this process, because the Legend Panels and software were not working, Kodiak began exploring other options to fulfill its needs, including the development of its own in-house technology to do what Legend's product clearly could not. Kodiak informed Legend of its intent to develop its own

system in April 2022. And on July 7, 2022, based on Kodiak's independent development of its own technology, Kodiak filed the application that led to the '151 Patent.

40.     On July 28, 2022, Kodiak also filed suit in Harris County District Court for breach of contract, seeking the return of funds it had paid to Legend (the "State Court Action"). *Kodiak Gas Services, LLC v. Legend Energy Advisors, LLC*, No. 2022-45482 (189th Dist. Court of Harris Cty. Tex.).[1]

41.     Legend answered and counterclaimed on September 2, 2022, alleging breach of contract and misappropriation of confidential information and trade secrets.  Legend's claims were baseless. Based on its own allegations in the State Court Action, Legend knew Kodiak was developing its own technology to fulfill its requirements due to Legend's failure to meet its contractual obligations. Kodiak did not, and indeed had no logical reason to, "reverse-engineer" Legend's non-functional products and software. Put simply, Legend's products did not work for their intended purpose and therefore it defies common sense that Kodiak would ever want to "reverse-engineer" those inoperable products. Instead, Kodiak took it upon itself to mitigate the loss of time and expense occasioned by Legend's failure to satisfy its contractual obligations.

### D.  The Settlement Agreement

42.     On September 19 and 22, 2022, the parties entered and executed a Mediation Settlement Agreement ("Settlement Agreement") to resolve the State Court Action, under which Kodiak and Legend agreed ████████████████████████████████████████. Attached hereto as Exhibit 3 is the Settlement Agreement.  As part of the Settlement Agreement, Legend promised, amongst other stipulations, to ███████████████████████████████ ████████████████████████████████████████████████████████████████████

---

[1] The State Court Action is currently stayed as a result of the parties' protracted and failed settlement negotiations.

█████████████████████████████████████████████████████ Ex.

3 at 4. Importantly, Kodiak agreed ████████████████████████████████

████████████████████████████████████████████████████████████

████ . *Id.* ████████████████████████████████████████████████

███████████████████████████████████████████████████ . And

Kodiak, amongst other stipulations, promised to █████████████████████ .

*Id.* Kodiak agreed to ██████████████████████████████████████

█████████████████████████████ as a stopgap while it implemented its

own technology. Legend was fully aware that Kodiak intended to develop its own system using

this equipment at the time of the Settlement Agreement. █████████████████

On top of this, Kodiak █████████████████████████████████████

████████████████████████████████████████████ .

     43.    But just like Legend never intended to perform under the MSA and the Work Order,

Legend knew it never intended to perform its obligations under the Settlement Agreement. Indeed,

in the 19 months since the Settlement Agreement and the year since K████████████████████

████████████ believing the parties had settled in good faith, Legend never ████████████

████████████████████████████████████████████ .

     44.    Instead, Legend engaged in repeated pretexts to delay ████████████████

████████████████████████████████████████ . For example, despite

knowing full well that Kodiak was going to ██████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ . And Legend

never even delivered ███████████████████████████████████ Instead, ████████

██████████████████████████████████████████████████████████████,

forcing Kodiak to incur significant additional expense and effort on top of the ████████████

████████ if it wanted to use them. This is all despite Kodiak █████████████████████████

███████████████████████████ for these very purposes.

45.     The reason that Legend refused ████████████████████████████████

████████████████████████████ is now clear; Legend never intended to allow

Kodiak to develop its own system despite its promises to the contrary. Instead, Legend intended

to continue threatening Kodiak with additional litigation and delay to try shake Kodiak down for

more money and prevent Kodiak from developing its own system. Indeed, Legend did just that in

its January 31, 2024 letter (discussed more below): Legend never intended to comply with the

Settlement Agreement in the first place and instead wanted to shake Kodiak down for even more

money. Kodiak, on the other hand, has been diligent in both ████████████████████ and

fulfilling its contractual obligations under the Settlement Agreement already entered, ███████

██████████████████████.

46.     Kodiak was unaware that Legend would not perform and never intended to perform

at the time the parties entered into the Settlement Agreement.

47.     Indeed, Kodiak reasonably believed that Legend had agreed to enter mediation for

settlement in good faith. Kodiak reasonably relied on the promises Legend made in the Settlement

Agreement.  And in reliance on the promises Legend made, Kodiak entered into the Settlement

Agreement.

48.     As a result of its detrimental reliance on Legend's false statements, Kodiak was

injured and ██████████████████████ pursuant to the Settlement Agreement that Legend did not

intend to and would never perform. Kodiak was also injured in the form of lost time and business

opportunities, and through the expenditure of legal fees pursuing an agreement with Legend that Legend never intended to abide.

### E.  The '151 Patent

49.     On March 21, 2023, the '151 Patent was duly and legally issued by the PTO.  The '151 Patent is entitled "Monitoring full emissions profile of a natural gas compressor."  The inventors of the '151 Patent are Messrs. Craig Collins, Jesus Elizondo, and Pedro Buhigas. A true and correct copy of the '151 Patent is attached as Exhibit 5.

50.     The inventions of the '151 Patent pertain to systems and methods related to monitoring and analyzing emissions and leak detection from natural gas compressors. As an example, an emissions analyzer can detect levels of various gases and relay said information to a control hub. As another example, leaks can be detected for alerting a user or operating group.

51.     The technology of the '151 Patent enables monitoring and analyzing natural gas compressors—including key information like gas levels and leaks—and is critically important in the natural gas industry. With thousands of natural gas compressors throughout the U.S. under its control, Kodiak understands the importance of this technology firsthand. Kodiak's experience with Legend's unreliable Panels and inability to deliver data further exemplifies the need for the technology achieved by the '151 Patent.

52.     The Kodiak technology and the '151 Patent are unique and fundamentally different than anything in Legend's products.

### F. Legend's January 31, 2024 Letter

53.     For over a year, Legend failed to live up to its promises under the Settlement Agreement and ███████████████████████████. As a result, Kodiak contacted the mediator that handled Settlement Agreement to seek assistance from the mediator in ███████

██████████████████████. On January 31, 2024, the evening before the scheduled call with the mediator, Legend sent a letter to Kodiak and the mediator in an obvious ploy to continue avoiding its settlement obligations. Attached hereto as Exhibit 4 is the January 31, 2024 letter. In the January 31 letter, Legend incredulously alleges ████████████████████████████

███████████████████████████████████████████████

████████████████████. Ex. 4 at 1. The letter concludes █████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████ *Id.* at 3-4.

54.     Kodiak trusted Legend to perform under each of the contracts.  Legend repeatedly duped Kodiak, extracting millions in payments for products that never worked and services it never intended to perform.  Kodiak seeks to recover the monies it paid to Legend, as well as a declaration that Kodiak is the rightful owner of the '151 patent and that the '151 patent correctly names the inventors who solved the problem that eluded Legend for years. Accordingly, a sufficiently concrete and justiciable controversy exists to support declaratory judgment jurisdiction surrounding the (i) questions of patent inventorship, ownership and enforceability regarding the '151 Patent (ii) allegations of trade secret misappropriation as a result of the '151 Patent, and (iii) fraudulent inducement.  The January 31 letter's allegations regarding these controversies are set out below:

### 1. Legend's January 31, 2024 Letter Allegations Regarding the '151 Patent

55.     Legend's January 31 letter directly puts at-issue at least the following with respect to the '151 Patent: (1) inventorship of the '151 Patent; (2) inequitable conduct against the PTO during the prosecution the '151 Patent; and (3) ownership of the '151 Patent.

56.     The '151 Patent properly includes the names of all of the inventors for each and every claim per 35 U.S.C. § 115. Indeed, Messrs. Craig Collins, Jesus Elizondo, and Pedro Buhigas are the true and original inventors of all of the claims of the '151 Patent. Each of these individuals contributed to the conception of the claimed inventions of the '151 Patent.

57.     Each of Messrs. Collins, Elizondo, and Buhigas executed a valid oath or declaration attesting to their inventorship of the claims of the '151 Patent before the payment of the issue fee. On or about June 27, 2022, Mr. Collins executed a declaration declaring himself to be an original inventor and assigning his rights to the patent to Kodiak. On or about June 17, 2022, Mr. Elizondo executed a declaration declaring himself to be an original inventor and assigning his rights to the patent to Kodiak. On or about June 29, 2022, Mr. Buhigas executed a declaration declaring himself to be an original inventor and assigning his rights to the patent to Kodiak.

58.     No other individuals are true and original inventors or coinventors for any of the claimed inventions of the '151 Patent. No other individuals collaborated with or contributed towards an aggregated effort along with Messrs. Collins, Elizondo, and Buhigas with respect to conception of any of the claimed inventions of the '151 Patent.

59.     The declarations of Messrs. Collins, Elizondo, and Buhigas were filed with the PTO on or about July 7, 2022. Kodiak recorded its assignment from Messrs. Collins, Elizondo, and Buhigas on or about July 13, 2022.

60.     No material information was withheld from the PTO during the prosecution of the '151 Patent, including inventorship. Nor did Kodiak deliberately deceive or deliberately attempt to deceive the PTO. Because Kodiak provided the PTO the proper inventorship information, there was no withholding of material information from the PTO and there was no actual deception nor intent to deceive the PTO.

17

61.     Messrs. Craig Collins, Jesus Elizondo, and Pedro Buhigas conceived the claimed inventions of the '151 Patent at least as early as 2021.

62.     Legend's January 31 letter claims that ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████ Ex. 4 at 2. Legend also implies that ██████████████████████████

████████████████████████████████████████████████████████████████

*Id.*

63.     Despite the gravity of Legend's ██████████████ allegations, Legend did not produce a single document showing that ████████████████████████████████

████████████████████████████████████████████████████████.

64.     Legend does not allege in its January 31 letter that ████████████████

████████████████████████████████████████████████████████████████

████████████████████. Rather, Legend claims ██████████████████████

████████████████████████████████████████████████████████ Ex. 4 at

2.

65.     Furthermore, Legend's January 31 letter never explains ██████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████. Legend generally states that ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████ Ex. 4 at 2.

66.     No, it does not. Legend provides no explanation as to ████████████████████ ████████████████████████████████████. Legend also provides no analysis demonstrating the same. For example, Legend never produced a claim chart showing how ████████████████████████████████████████████.

67.     At bottom, Legend's claims ████████████████████████████████ ████████████████████████████████████████ are nothing but unsupported accusations, raised too late in an effort to extract even more money from Kodiak and in contravention of Legend's representations in the Settlement Agreement. Indeed, Legend's inability to provide fully working Legend Panels and produce critical gas-compression-unit data shows the opposite is true. Legend has no "secret sauce" and even if it did, Kodiak wants nothing to do with it because its products were an abysmal failure.

68.     Further, to the extent Legend even has anything it could legitimately claim was a trade secret, Kodiak was not exposed to them. Instead, the only thing Kodiak was exposed to were non-functional Panels and technology using outdated industry standard components that were already well known publicly and in the industry. As a result, the limited Legend information Kodiak was exposed to could not form the basis of a valid trade secret claim, even if it related to functional systems, which it did not.  It strains credibility for Legend to claim that Kodiak would steal its outdated technology, which did not work and it could not deliver.  Rather than scheming to steal whatever Legend's undefined trade secrets were that allegedly underpinned its non-functional technology, Kodiak devoted its time and resources into independently developing its own functional technology based on a completely different foundation and methodology, and, recognizing Kodiak's innovation, the U.S. Patent Office awarded a patent to Kodiak.

69.     Given that ████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████

70.     Kodiak also is not required to ████████████████████████████. No

provision from the MSA, the Work Order, the Settlement Agreement, or any other agreement

between Kodiak and Legend requires ████████████████████████████. And,

in any event, those contracts are void as a result of Legend's fraudulent inducements and failure

to perform as set out below.

71.     The '151 Patent does not ████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████.

72.     The '151 Patent does not ████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████.

73.     The '151 Patent does not ████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

74.     ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████

75.     At least for the foregoing reasons, Kodiak reasonably believes and remains reasonably apprehensive of suit by Legend, including reasonable apprehension of suit by Legend for correction for inventorship under 35 U.S.C. § 256.

76.     In addition, Kodiak reasonably believes and remains reasonably apprehensive of suit by Legend, including reasonable apprehension of suit by Legend for inventorship, ownership, and inequitable conduct during prosecution of the '151 Patent under at least 35 U.S.C. §§ 101, 256, and 37 C.F.R. § 1.56.

77.     Kodiak is being harmed by the uncertainty of the inventorship, ownership, and validity of the '151 Patent, because of Legend's claims, conduct and threats of further legal action ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████.

78.     Furthermore, Kodiak is being harmed by the uncertainty of its ownership of the '151 Patent by assignment because of Legend's claims and conduct.

**2.     Legend's January 31, 2024 Letter Trade Secret Allegations**

79.     Legend's January 31 letter also generally alleges misappropriation of its trade secrets by Kodiak, ████████████████████████████████████████████ ██████████████████████████. This is blatantly false.

80.     "The Texas Supreme Court . . . defines a trade secret as 'any formula, pattern, device, or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'" *Zoecon Indus., a Div. of Zoecon Corp. v. Am. Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983) (quoting *Hyde Corp. v. Huffines*, 1958, 158 Tex. 566, 586, *cert. denied*, 358 U.S. 898). "[T]o qualify as a

trade secret the information cannot be generally known by others in the same business nor readily ascertainable by an independent investigation." *Id.* Hence, "a trade secret must be 'secret'." *Id.*

81.     Although Legend alleges trade secret misappropriation against Kodiak, it is unclear what Legend's trade secret is or how Kodiak misappropriated the same. Legend never explicitly defines what its trade secret is. Nor does Legend generally describe it. Instead, after prefacing that its claims are ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████ Ex. 4 at 2. It is unclear ██████████████████████████████████████████████████. Legend further alleges that ██████████████████████████████████████████████████████████████ ███████████ *Id.* Legend does not explain what this ███████████████████████████████ is.

82.     Indeed, Legend's products and software are not trade secrets at all, but are based on outdated off-the-shelf components that did not even operate as intended or required by the MSA and Work Order.  Indeed, others in the industry offer similar, yet operable, products. Nothing Legend purports to provide is any different, new or secret—aside from the fact it does not work— from the rest of the industry or otherwise not ascertainable by more than a simple independent investigation.

83.     In contrast, the '151 Patent is a different technology that goes beyond the mere application of these basic principles.

84.     Moreover, as described above, the '151 Patent does not incorporate or rely upon any of Legend's software, technology, or confidential information.

### 3.    Legend's January 31, 2024 Fraudulent Inducement Allegations

85.    Legend's January 31 letter also claims that ███████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████ Legend never intended to allow Kodiak to develop its own system free from threat of continued litigation and Legend never intended to ███████████████
████████████████████████████.

86.    When the parties mediated, Legend was aware that Kodiak was developing its own technology, which is what is set out in the '151 Patent, as that was part of the basis of Legend's counterclaims in the State Court Action.  Legend specifically alleged in the State Court Action that Kodiak was developing that technology by reverse engineering Legend's devices and/or software. Nor was it a secret that Kodiak was developing its own technology; Kodiak informed Legend that it was doing so because Legend's products did not work and could not provide Kodiak with the monitoring services and data that Kodiak needed. And the Settlement Agreement expressly provided for Legend ███████████████████████████████████ so that Kodiak could continue developing its own system. Kodiak's open and notorious actions are not those of a trade secret misappropriator, but those of a party that acted in good faith, and was eventually forced to go its own way as a result of Legend's duplicity and false promises that it never intended to deliver on. Given Kodiak's open and notorious actions in the development of its own technology,

which is now reflected in the '151 Patent, Legend's claims of fraudulent inducement are completely baseless.

87.     Kodiak also denies Legend's trade secret allegations in its January 31 letter.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████

88.     Further, Kodiak never promised to cease development or implementation of Kodiak's technology. Just the opposite. Kodiak sought to settle the State Court Action claims to expressly allow it to continue development and implementation of Kodiak's technology, free of Legend's frivolous allegations. And Legend promised ██████████████████████████████ under the Settlement Agreement to allow Kodiak to do just that—continue developing and implementing its own technology.

89.     Moreover, Legend's fraudulent inducement allegations in its January 31 letter are legally deficient under Texas law. To establish fraud by non-disclosure, the complaining party must establish that the defendant had a duty to disclose the undisclosed facts, but "there is no duty to disclose without evidence of a confidential or fiduciary relationship" and the complaining party must reasonably rely on the non-disclosure. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019). Texas law is clear that there is no confidential or fiduciary relationship between opposing parties in litigation.  The adversarial relationship between parties litigating against one another "is the antithesis of a confidential relationship."  *Patrick v. Howard*, 904 S.W.2d 941, 945 (Tex. App.—Austin 1995, no writ).

Indeed, in Texas, "reliance on representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context, such as litigation." *Ortiz v. Collins*, 203 S.W.3d 414, 422 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

90.     Nor is the fact that the '151 Patent application was confidential in any way probative of anything. It is the standard practice of the PTO.  All original patent applications are generally kept confidential for 18 months, unless the applicant requests that they be kept confidential until the patent issues, which is something Kodiak did not do.  35 U.S.C. § 122(b)(1)(A); *see also* 35 U.S.C. § 122(b)(2)(B) (opting out of the standard 18-month publication loses the right to file foreign counterpart patent applications).

91.     Accordingly, Legend's threatened claim of fraudulent inducement is both factually and legally baseless.

92.     The bottom line is that Kodiak paid Legend more than ███████ for Panels that did not work and were incapable of providing the required data just to secure peace from Legend and its repetitive claims.  Kodiak reasonably relied on Legend's promises to deliver working Panels that would perform in a workmanlike manner to Kodiak's satisfaction, and Kodiak reasonably relied upon Legend's release all claims. For its ██████, Kodiak has received further threats, non-functional equipment, and expended considerable resources defending against Legend's repeated baseless threats of trade secret misappropriation that should have been settled years ago. The only reasonable conclusion is that Legend knew its promises were false when it made them and made them simply to induce Kodiak to pay Legend ██████. Now, Legend is threatening Kodiak with more lawsuits and seeking more money.  Enough is enough, Legend must be stopped. Kodiak seeks Court intervention to put an end to this stick-up.

**V.**
**CLAIM FOR DECLARATORY JUDGMENT**

93.     Kodiak incorporates herein and realleges, as if fully set forth in this paragraph, the allegations set forth in the preceding paragraphs.

94.     Kodiak is the assignee and the owner of the '151 Patent.

95.     The allegations contained in Legend's January 31, 2024 letter have created a reasonable apprehension in Kodiak that Legend will bring claims under 35 U.S.C. §§ 101, 256 and 37 C.F.R. § 1.56, as well as related common law claims for misappropriation of trade secrets and fraudulent inducement of the Settlement Agreement.

96.     An actual controversy exists within the meaning of 28 U.S.C. § 2201 as to whether the inventors were properly named on the '151 Patent in accordance with 35 U.S.C. § 116, ████████████████████████████████████████████████████████████████ ████████ Kodiak denies these allegations. There is a genuine dispute between Kodiak and Legend as to the inventorship of the '151 Patent. Thus, pursuant to 28 U.S.C. § 2201, Kodiak seeks a declaration by the Court that Craig Collins, Jesus Elizondo, and Pedro Buhigas are properly named as the inventors on the '151 Patents.

97.     An actual controversy exists within the meaning of 28 U.S.C. § 2201 as to whether the '151 Patent was obtained based on inequitable conduct against PTO. There is a genuine dispute between Kodiak and Legend as to whether the '151 Patent is valid based on whether material information, including the identity of the true inventors, was intentionally withheld from the PTO under 37 C.F.R. § 1.56, as alleged in Legend's January 31, 2024 letter. Kodiak denies these allegations. Thus, pursuant to 28 U.S.C. § 2201, Kodiak seeks a declaration by the Court that the '151 Patent was not obtained due to any inequitable conduct against the PTO.

98.     An actual controversy exists within the meaning of 28 U.S.C. § 2201 as to whether Kodiak is the sole owner by assignment of the '151 Patent. Based on Legend's allegations in its January 31, 2024 letter, there is a genuine dispute between Kodiak and Legend as to whether ████████████████████████████████████████████████████████████████████ ████████████████████████████. Thus, pursuant to 28 U.S.C. § 2201, Kodiak seeks a declaration by the Court ████████████████████████████████████████████████ ████████████████ that Kodiak is the true assignee of the '151 Patent by its assignment from Craig Collins, Jesus Elizondo, and Pedro Buhigas. The determination of the proper owner through assignment of the '151 Patent arises out of a common nucleus of operative fact with the disputes regarding inventorship and enforceability of the '151 Patent because they all relate to allegations or conduct occurring during and/or as a result of the MSA, Work Order, and Settlement Agreement.

99.     An actual controversy exists within the meaning of 28 U.S.C. § 2201 as to whether Kodiak has misappropriated any of Legend's trade secrets. Based on Legend's allegations in its January 31, 2024 letter, there is a genuine dispute between Kodiak and Legend as to whether Legend has identified an actual trade secret under Texas law and ███████████████████████ ██████████████████████████ Thus, pursuant to 28 U.S.C. § 2201, Kodiak seeks a declaration by the Court that Kodiak has not misappropriated any of Legend's trade secrets and that the ████ ██████████████████████████████████████████. The alleged misappropriation of trade secrets through the filing of the '151 Patent arises out of a common nucleus of operative fact with the disputes regarding inventorship, enforceability, and ownership of the '151 Patent because they all relate to allegations or conduct occurring during and/or as a result of the MSA, Work Order, and Settlement Agreement.

100.     An actual controversy exists within the meaning of 28 U.S.C. § 2201 as to whether Kodiak fraudulently induced Legend to agree to the Settlement Agreement. There is a genuine dispute between Kodiak and Legend as to whether the Settlement Agreement was induced by fraud because Kodiak did not inform Legend of the '151 Patent application. Thus, pursuant to 28 U.S.C. § 2201, Kodiak seeks a declaration by the Court that Kodiak did not fraudulently induce Legend to agree to the Settlement Agreement by not informing Legend of the '151 Patent application. The alleged fraudulent inducement arises out of a common nucleus of operative fact with the disputes regarding inventorship, enforceability, and ownership of the '151 Patent because they all relate to allegations or conduct occurring during and/or as a result of the MSA, Work Order, and Settlement Agreement.

## VI.
## CLAIM FOR FRAUD IN THE INDUCEMENT OF THE MSA AND WORK ORDER

101.     Kodiak incorporates herein and realleges, as if fully set forth in this paragraph, the allegations set forth in the preceding paragraphs.

102.     As set out in detail above, at the time Legend entered into the MSA and the Work Order with Kodiak, Legend knowingly never intended to perform its promises in the MSA and Work Order.  Legend promised ███████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ███████, in accordance with the terms of the Work Order. Legend failed to perform ████ █████████████████████████████████████████████████████████████████ ███████ as promised. Instead, Legend delivered largely non-functional Panels—or no Panels at all—and for the few Panels that did function, the data from the vast majority of those was not available to Kodiak. Legend knew it could not perform as required, nor provide products and

28

services that performed as promised. Indeed, Legend lacked the technical expertise to provide these products and services and never intended to perform.

103.    Legend nevertheless promised Kodiak in the MSA and Work Order that it would perform with the intent to mislead Kodiak such that Kodiak would enter into the agreements.

104.    Legend was aware at the time it executed the agreements that it did not intend to, nor could it, comply with the MSA and the Work Order.

105.    Kodiak was unaware that Legend was unable to and did not intend to perform its promises in the MSA and the Work Order and was induced to enter into the MSA and Work Order based on Kodiak's fraudulent representations therein. Kodiak reasonably relied on Legend's promises in the MSA and Work Order to enter into the MSA and Work Order.

106.    Legend's fraudulent inducement of Kodiak into the MSA and Work Order arises out of a common nucleus of operative fact with the disputes regarding inventorship, ownership, and inequitable conduct during prosecution of the '151 Patent because they all relate to allegations or conduct occurring during and/or as a result of the MSA, Work Order, and Settlement Agreement.

107.    As a result of Kodiak's detrimental reliance on Legend's false statements and Legend's fraudulent inducement of Kodiak to enter into the MSA and Work Order, Kodiak was injured in an amount to be determined at trial, including at least ██████████████ ████ under the MSA and Work Order.

**VII.**
**CLAIM FOR FRAUD IN THE INDUCEMENT OF THE SETTLEMENT AGREEMENT**

108.    Kodiak incorporates herein and realleges, as if fully set forth in this paragraph, the allegations set forth in the preceding paragraphs.

109.    At the time Legend entered into the Settlement Agreement with Kodiak, Legend knew it never intended to perform its promises in the Settlement Agreement, including at least (1) ███████████████████████████████████████████████████████████ █████████████████████████ and (2) ████████████████████████ that Kodiak could use to develop its own technology.

110.    At the time Legend entered the Settlement Agreement, it never intended to perform these promises.  Legend knew it intended to ██████████████████████████████ █████████████████████████████████████████ to try and extract even more money from Kodiak and prevent Kodiak from developing its own technology. And Legend knew it did not intend to ████████████████████████████████████████████ ████████ promised in the Settlement Agreement.

111.    Kodiak was unaware of Legend's plan not to perform its obligations under the Settlement Agreement. Therefore, Kodiak reasonably relied on, and was fraudulently induced to enter into, the Settlement Agreement based on Legend's empty promises in the Settlement Agreement.

112.    Legend's fraudulent inducement of Kodiak into the Settlement Agreement arises out of a common nucleus of operative fact with the disputes regarding inventorship, ownership, and inequitable conduct during prosecution of the '151 Patent because they all relate to allegations or conduct occurring during and/or as a result of the MSA, Work Order, and Settlement Agreement.

113.    As a result of Kodiak's detrimental reliance on Legend's false statements and Legend's fraudulent inducement of Kodiak to enter the Settlement Agreement, Kodiak was injured in an amount to be determined at trial, including at least the ██████████████████████

under the Settlement Agreement, and additional ████████████████████████████ ████████████████████████████, totaling ██████████.

## VIII.
### PRAYER FOR RELIEF

114.    WHEREFORE, Plaintiff Kodiak respectfully prays that the Court enter a Declaratory Judgment and Judgment in its favor as requested herein, including:

    a.  the declarations as set forth above;

    b.  determine that Legend fraudulently induced Kodiak to enter into the MSA, Work Order, and Settlement Agreement;

    c.  rescission of the MSA, Work Order, and Settlement Agreement because of Legend's fraudulent inducement;

    d.  actual damages in an amount to be determined at trial;

    e.  exemplary and/or punitive damages;

    f.  attorneys' fees;

    g.  costs; and

    h.  any such other relief as the Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff Kodiak respectfully requests a trial by jury on all issues triable thereby.

DATED: April 11, 2024

By: */s/ Chad E. Stewart*
Chad E. Stewart
Texas Bar No. 24083906
Fed. I.D. No. 2868363
KING & SPALDING LLP
1100 Louisiana
Suite 4100
Houston, Texas 77002
Telephone: (713) 751-3229
Facsimile: (713) 751-3290
cstewart@kslaw.com

Christopher C. Campbell (*pro hac vice to be filed*)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
Telephone: (202) 626-5578
Facsimile: (202) 626-3737
ccampbell@kslaw.com

Britton F. Davis *(pro hac vice to be filed)*
KING & SPALDING LLP
1401 Lawrence Street
Suite 1900
Denver, CO 80202
Telephone: (720) 535-2300
Facsimile: (720) 535-2400
bfdavis@kslaw.com

*Attorneys for Plaintiff Kodiak Gas Services, LLC*