United States District Court
Southern District of Texas
**ENTERED**
March 31, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KODIAK GAS SERVICES LLC, | § | CIVIL ACTION NO |
| | § | 4:24-cv-01333 |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| LEGEND ENERGY | § | |
| ADVISORS LLC, | § | |
| Defendant. | § | |

OPINION AND ORDER
GRANTING MOTION TO COMPEL ARBITRATION

The motion by Defendant Legend Energy Advisors, LCC, to compel arbitration is granted, with modification. Dkt 30. All claims asserted by any party in this action will be sent to arbitration.

The motion by Plaintiff Kodiak Gas Services, LLC, to dismiss certain counterclaims and third-party claims against it is denied without prejudice. Dkt 32.

1.    Background

A description of the facts and contentions that the parties apparently want to continue fighting about could fill pages. But the extraordinary breadth of their prior settlement agreement, together with its inclusion of an arbitration clause, makes only the lightest of procedural facts necessary.

This action traces to an agreement in February 2021 by which Legend would supply Kodiak with hundreds of panels that would provide data monitoring and analytics in various types of industrial machinery. Dkt 1 at ¶21. That

agreement came with strict protections of confidentiality and intellectual property. Dkt 16 at 6–13.

Kodiak ultimately asserted that the Legend panels never worked and began developing its own system, with both parties thereafter suggesting breach by the other. Kodiak brought action in July 2022 against Legend in Harris County District Court, to which Legend answered and counterclaimed. Dkts 1 at ¶¶4, 40–41 & 24 at 1. The parties then entered a settlement agreement in September 2022, under the good offices of the highly regarded Honorable Caroline Baker as mediator. Dkt 2-2 at 70–73.

Paragraph 2 of the mediation settlement agreement provides, with emphasis:

> The parties hereto agree to settle *all claims (including counterclaims) and controversies* between them, *whether asserted or assertable in this case*, which arise from *or are related to* the transactions or occurrences which are the subject matter of this litigation.

Id at 70.

Paragraph 5 of that agreement further provides, with emphasis:

> The parties acknowledge that bona fide disputes and controversies exist between the parties, both as to liability and the amount thereof, if any, and by reason of such disputes and controversies the parties hereto desire to compromise and settle all claims and causes of action of any kind whatsoever which the parties have *or may have in the future* arising from *or related to the transactions or occurrences which are the subject matter of this litigation.* It is understood and agreed that this is a compromise of disputed claims, and nothing contained herein shall be construed as an admission of liability by or

2

on behalf of any party, all such liability
being expressly denied.

Id at 70–71.

Paragraph 6 of that agreement then provides, with
emphasis:

Plaintiff and Defendant shall release,
discharge, and forever hold each other
harmless from any and all claims,
counterclaims, demands, or suits, *known or
unknown*, fixed or contingent, liquidated or
unliquidated, *whether or not asserted in the
above case*, as of this date, *arising from or
related to the transactions or occurrences
which are the subject matter of this
litigation*, EXCEPT as to the obligations
set forth herein. These mutual releases run
to the benefit of all attorneys, insurers,
agents, employees, officers, directors,
shareholders, partners, members,
managers, heirs, assigns, and legal
representatives of the released parties
hereto.

Id at 71.

Paragraph 3 references "essential items" attached as
Exhibit A "that constitute the Rule 11 Settlement
Agreement between the parties," which include:

Mutual Decisions:

. . .

- Judge Baker as an arbitrator (with
authority to award damages, costs and
attorney fees if either side does not timely
complete obligations); If Judge Baker is not
available, the parties will agree on an
arbitrator to resolve disputes.

Id at 70, 73.

The settlement agreement also required Kodiak to pay
Legend three million dollars over a specified timeline, as

well as return certain parts and equipment. Id at 73. It complied, with the last payment made in January 2024. Dkt 1 at ¶45.

As it turns out, Kodiak had filed a patent application in July 2022 (during the very time of the state-court dispute) with respect to the system it allegedly developed, which the United States Patent and Trademark Office granted. Dkt 24 at ¶166. Legend contends that this wasn't disclosed prior to execution of the settlement agreement, and that Kodiak violated its trade secrets and certain representations made in the settlement agreement about such usage. Id at ¶¶187–89.

Legend discovered Kodiak's patent application and issuance of the '151 Patent in December 2023 and asserted itself as the owner. Id at ¶¶190–92. Kodiak thus brought this action on claims for declaratory judgment and fraudulent inducement. Dkt 1. Legend filed counterclaims, stating the same claims from its state-court action in addition to a patent-ownership claim. Dkt 24. And Daniel Crosby, who was Legend's principal at the time, filed third-party claims seeking declaratory relief to be named the sole inventor of the patent. Id at ¶230.

Pending is a motion by Legend and Crosby to compel arbitration as to the claims of fraudulent inducement asserted by each of the parties and the claim for misappropriation of trade secrets asserted by Legend. Dkt 30 at 22–23. Kodiak responds in part that, if any of the claims in this action go to arbitration, they all should go. Dkt 36 at 6, 19–23. Also pending is its motion to dismiss the counterclaims and third-party claims of Legend and Crosby. Dkt 32.

2.  Legal standard

Section 3 of the Federal Arbitration Act directs district courts to stay proceedings if "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 USC §3. "Congress has decreed a strong federal policy in favor or arbitrating disputes." *Joseph Chris Personnel Services Inc*

*v Rossi*, 249 Fed Appx 988, 990 (5th Cir 2007). But this policy in favor of arbitration can't be used to modify or expand the terms of the underlying arbitration agreement. *Morgan v Sundance, Inc,* 596 US 411, 418 (2022).

An arbitration agreement is enforceable if (i) the parties entered into a valid arbitration agreement, and (ii) the claim at issue is covered by the arbitration agreement. *Kubula v Supreme Products Services Inc*, 830 F3d 199, 201 (5th Cir 2016); *Edwards v Doordash Inc,* 888 F3d 738, 743 (5th Cir 2018). In determining whether the parties agreed to arbitrate the claims at issue, "courts generally should apply ordinary state-law principles." *Webb v Investacorp Inc*, 89 F3d 252, 258 (5th Cir 1996).

3.    Analysis

The parties don't dispute that they entered into a written settlement agreement with a valid, mandatory arbitration provision. See Dkts 30 at 16 & 36 at 14. But they dispute its scope and applicability to the claims here.

The Fifth Circuit holds that, so long as a valid agreement to arbitrate exists, "there is a presumption that their disputes will be deemed arbitrable unless it is clear that the arbitration clause has not included them." *Polyflow LLC v Specialty RTP, LLC*, 993 F3d 295, 303 (5th Cir 2021) (cleaned up). The resisting party bears the burden to prove that the disputes are not arbitrable. *Overstreet v Contigroup Companies, Inc*, 462 F3d 409, 412 (5th Cir 2006).

Each in their own way, the parties wish to pick and choose what they must abide by and what they may ignore in the settlement agreement. But the obligations of the parties under the settlement agreement entail the very scope of the agreed resolution itself. And that was, per paragraph 5, "to compromise and settle *all* claims and causes of action *of any kind whatsoever* which the parties have *or may have in the future* arising from *or related to* the transactions or occurrences which are the subject matter of this litigation," and, per paragraph 6, "release, discharge, and forever hold each other harmless from *any*

*and all* claims, counterclaims, demands, or suits, *known or unknown*, fixed or contingent, liquidated or unliquidated, *whether or not asserted in the above case*, as of this date, *arising from or related to* the transactions or occurrences which are the subject matter of this litigation." Dkt 2-2 at 70–71.

There were also payment terms, along with a requirement to return certain parts and equipment. Id at 73. Kodiak thus contends that future arbitration was limited to issues of such payment and return. Dkt 36 at 14. But while those terms were important, they were simply in service of perfecting a settlement and release on all of the broad terms stated in the agreement itself. It's thus in no way *clear*, per the directive in *Polyflow*, that the claims in this action are *not* subject to the arbitration clause.

The facts in *Polyflow* in fact bear striking resemblance to those here. A manufacturer sued its former president and his new, competing company, alleging unauthorized use of its trade secrets. That lawsuit resulted in a settlement agreement containing an arbitration clause. 993 F3d 295 at 300. The manufacturer later filed a motion to compel arbitration, seeking to arbitrate its claims of fraudulent inducement, breach of the settlement agreement, trademark infringement, and other federal and Texas statutory and common law violations. Id at 301. The district court denied the motion, and the Fifth Circuit reversed due to the federal presumption of arbitrability, the broad language in the arbitration clause, and the claims relating directly to the settlement agreement. Id at 303. And further, relying on past precedent, the panel stated that "a defense that does not specifically relate to the arbitration agreement . . . must be submitted to the arbitrator as part of the underlying dispute." Id at 306; see also id at 307 (attack on scope of provision means arbitrator, not court, should address those defenses).

The motion by Legend to compel arbitration will thus be granted, but with modification that this entire action, and all causes of action as asserted between the parties, will be referred to arbitration. Dkt 30. This comports with

6

argument by Kodiak that all claims must go to arbitration if Legend's initial, broad reading of the arbitration is accepted. Dkt 36 at 6. And to be clear, this includes, without limitation, "Legend's patent ownership and inventorship counterclaims" and "Kodiak's claims for declaratory judgment on those issues." Dkt 30 at 22.

The motion by Kodiak to dismiss the counterclaims and third-party claims against it will be denied without prejudice. Dkt 32. Such contentions may be pursued as determined allowable in arbitration.

### 4. Conclusion

The motion by Defendant Legend Energy Advisors, LCC, to compel arbitration is GRANTED, as modified. Dkt 30.

The motion by Kodiak Gas Services, LLC, to dismiss certain counterclaims and third-party claims against it is DENIED WITHOUT PREJUDICE. Dkt 32.

This action is STAYED and ADMINISTRATIVELY CLOSED pending the result of arbitration.

The parties are ORDERED to provide a joint status report as to the status of arbitration on September 30th and March 31st of each year until this action is dismissed or restored to the docket.

SO ORDERED.

Signed on March 31, 2025, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge